IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIM KELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-0883 |
| ) | Judge Trauger |
| FIFTH THIRD BANK, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant (Docket No. 22), to which the plaintiff has filed a response (Docket No. 28), and in support of which the defendant has filed a reply (Docket No. 30). For the reasons discussed below, the defendant's motion will be granted.

## FACTS

The plaintiff, Kim Keller, was employed as a licensed sales assistant in the investment advisors division of the defendant, Fifth Third Bank ("Fifth Third").[1] Her job was to provide sales support to registered securities representatives (primarily, retail investment consultants or private client advisors) and to execute securities trades as directed.

The plaintiff was hired in August 2004. In November 2004, she submitted a complaint to

---

[1] Unless otherwise noted, the facts are drawn from the defendant's statements of undisputed facts (Docket No. 24), the plaintiff's response thereto (Docket No. 28, Ex. 2), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

1

Fifth Third regarding a male co-worker, George Khoury, who was paid 23% more than she despite having the same job title. The defendant investigated and, in February 2005, determined that Khoury had been placed in the incorrect job code, because he had "additional job duties and individual sales goals." (Docket No. 25 ¶ 11.) According to Mary Beth Frith, the defendant's Assistant Vice President of Employee Relations, Khoury "functioned in more of a 'junior broker' role[,] but there was not a job title or job code for that role." (*Id.*) In contrast, the plaintiff had no defined individual sales goals. The defendant's investigation further showed that the plaintiff's salary was above average for employees with her job code.

On September 5, 2006, Fifth Third informed its employees that, effective December 2006, it was expanding its licensing policy for its securities employees. Under the new policy, licensed sales assistants were required to obtain either (1) Series 7 and 66 licenses or (2) Series 7, 63, and 65 licenses. If an employee did not meet the new requirements, he or she was given two attempts to pass the necessary licensing exams. Employees who failed those exams were given 45 days to apply for positions within Fifth Third that did not require such licenses.

Because the plaintiff held only Series 7 and 63 licenses, she did not meet the new licensing requirements. She subsequently took, and failed, the Series 66 licensing exam twice, on May 21, 2007 and September 18, 2007. Fifth Third departed from its policy and allowed the plaintiff to take the Series 66 exam a third time within 30 days of her second failure, but she declined. Instead, the plaintiff voluntarily resigned on October 22, 2007.

The plaintiff filed a formal charge with the Equal Employment Opportunity Commission, alleging gender discrimination, on October 15, 2008. (Docket No. 23, Ex. 2 at 62.) Her current

Complaint asserts claims of sexual harassment, gender discrimination, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The Complaint alleges that male employees would refer clients only to other male employees.[2] (*Id.* ¶ 9.) It further alleges that the plaintiff was "scolded" for bringing a pay disparity between herself and a male co-worker to her supervisor's attention (*id.* ¶ 12) and that she was denied promotions because of her gender (*id.* ¶ 14).

The defendant has now filed a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. The sole evidence submitted by the plaintiff in opposition to the motion is her own page-long declaration. In it, the plaintiff states that she took the job at Fifth Third because she was "heavily recruited" by the bank and was promised "rapid advancement." (Docket No. 28, Ex. 1 at 1.) Because she was never promoted, the plaintiff "felt that [she] had been a victim of some sort of 'bait and switch.'" (*Id.*) It is undisputed, however, that the plaintiff never applied for any promotions during her employment at Fifth Third.

The plaintiff's declaration points out three specific instances of alleged gender discrimination: (1) in 2004, Khoury earned more money than she despite "perform[ing] essentially the same tasks"; (2) at some point, her supervisor, Robert Corsarie, told her that "[she] would not be advancing within the organization and that [her] current position was as far as [she] would be going in the foreseeable future"; and (3) in 2007, Fifth Third did not apply the new licensing requirements to Michael Harris, a retail investment consultant. (*Id.*)

---

[2] It is undisputed, however, that, as a licensed sales assistant, the plaintiff was not eligible to accept referrals or to make commissions on sales.

## ANALYSIS

I.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

II. **Timeliness**

The defendant argues that the plaintiff's suit is time-barred, because she failed to submit a charge to the EEOC within the relevant time limit. (Docket No. 23 at 4-5.) Title VII provides

4

that, to maintain a claim against an employer, an employee must file a charge with the EEOC within either 180 or 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) ("A party, therefore, must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it.").

Here, it is undisputed that any alleged discrimination or harassment ended when the plaintiff resigned on October 22, 2007.[3] Thus, the deadline for filing an EEOC charge was, at the latest, 300 days after that date, which was August 17, 2008. But the plaintiff's "Charge of Discrimination" document clearly indicates that it was signed by the plaintiff, and received by the EEOC, on October 15, 2008. (Docket No. 23, Ex. 2 at 62.) Therefore, the plaintiff's submission was untimely, and her Title VII claims are time-barred.

In her declaration, the plaintiff states that, "[o]n August 3, 2008, [she] delivered a typed charge to the EEOC which included a cover letter stating 'The purpose of this letter is to formally file a charge with the EEOC against my former employer, Fifth Third Bank.'" (Docket No. 28, Ex. 1.) Citing *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), the plaintiff argues that this was sufficient to meet Title VII's administrative requirements, because the letter's contents can be "'reasonably construed as a request for the agency to take remedial action to protect the employee's rights.'" (Docket No. 28 at 3 (quoting *Holowecki*, 552 U.S. at 402).) The defendant objects that the plaintiff has failed to submit the letter to the court.

---

[3] The plaintiff's EEOC charge states that the latest date of discrimination was October 17, 2007. (Docket No. 23, Ex. 2 at 62.)

5

(Docket No. 30 at 1.)

The court finds that, because the plaintiff has failed to submit the letter itself, her statements regarding the letter are inadmissible. At summary judgment, "the nonmoving party . . . must identify specific facts that can be established by *admissible* evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (emphasis added); *see also* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."). The Federal Rules of Evidence incorporate the best-evidence rule and provide that, "[t]o prove the content of a writing, . . . the original writing . . . is required."[4] Fed. R. Evid. 1002. "[O]ther evidence of the contents of a writing," including testimony regarding the document, is admissible only if the document has been lost or destroyed or is otherwise unobtainable. *Id.* 1004(1)-(3).

The plaintiff does not suggest that the August 3, 2008 letter was lost or destroyed, and she does not state that there is any reason why she cannot obtain it. Accordingly, her testimony regarding the content of the letter is inadmissible, and the court will not consider it in opposition to the defendant's motion. *Copeland Corp. v. Choice Fabricators Inc.*, 345 Fed. Appx. 74, 79 (6th Cir. 2009) (affirming the exclusion of evidence under the best-evidence rule because the party offering the evidence "never argued that any of the Rule 1004 exceptions applied"); *see also R.R. Mgmt. Co. LLC v. CFS La. Midstream Co.*, 428 F.3d 214, 219 (5th Cir. 2005) (affirming the district court's decision to exclude testimony regarding an agreement at summary

---

[4] Duplicates of documents are generally admissible, however. *See* Fed. R. Evid. 1003.

judgment because the party "provided no justification for its failure to submit admissible copies of [the agreement]"); *Int'l Media Films, Inc. v. Lucas Entm't, Inc.*, 703 F. Supp. 2d 456, 464 (S.D.N.Y. 2010) (excluding evidence of an agreement at summary judgment because "[the plaintiff] has not explained why it believes that the original . . . agreement . . . is lost or destroyed, or why the original cannot be obtained").

Aside from the plaintiff's inadmissible statements, there is no evidence to suggest that her EEOC charge was timely submitted. Accordingly, the court will dismiss the plaintiff's claims as time-barred.

## III. Merits of the Plaintiff's Title VII Claims

Even if the plaintiff's claims were not time-barred, however, they would fail on the merits. The defendant argues that the plaintiff's evidence is insufficient to show a *prima facie* case of gender discrimination. (Docket No. 23 at 6-18.)

Title VII claims are analyzed under the familiar framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). If, as here, there is no direct evidence of gender discrimination, the plaintiff must establish a *prima facie* case via indirect or circumstantial evidence. If the plaintiff does so, the burden shifts to the defendant to "offer admissible evidence of a legitimate, nondiscriminatory reason for its action." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (quotation marks omitted). If the defendant offers such evidence, the plaintiff "must [then] identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.* (quotation marks omitted). The burden is on the plaintiff to show "that the employer's

7

explanation was fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). At each stage of the *McDonnell Douglas* inquiry, "a district court considers whether there is sufficient evidence to create a genuine dispute." *Risch*, 581 F.3d at 390 (quotation marks omitted).

### A. Failure to Promote

The central allegation underlying the plaintiff's claims is that Fifth Third refused to promote her to the position of retail investment consultant ("RIC") because of her gender. To establish a *prima facie* failure-to-promote claim, the plaintiff must show that:

> (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion; (3) she was considered for and was denied the promotion; and (4) other similarly qualified employees who are not members of the protected class received promotions at the time she was denied a promotion.

*Ray v. Oakland County Circuit Court*, 355 Fed. Appx. 873, 876-77 (6th Cir. 2009) (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003)). Here, the plaintiff cannot establish a *prima facie* claim because: (1) she never applied for a promotion; (2) after the new licensing requirements became effective, she was not qualified for a promotion; and (3) she has not shown that a similarly qualified male was promoted instead of her.

First, it is undisputed that the plaintiff never actually applied for a promotion. According to her declaration, she "repeatedly communicated her desire to achieve the promotions promised to [her] during the recruitment process." (Docket No. 28, Ex. 1 at 1.) But "express[ing] a general interest in the position . . . is not enough to meet the application requirement." *Day v. Krystal Co.*, 471 F. Supp. 2d 874, 890 (E.D. Tenn. 2007). At her deposition, the plaintiff

8

admitted that she never formally applied for the RIC position, even though she could have applied via Fifth Third's online system. (Docket No. 23, Ex. 1 at 65-66, 91, 129.)

The plaintiff argues that the application requirement is relaxed because her supervisors discouraged her from applying. (Docket No. 28 at 5, 7.) It is true that, "[b]ecause an employer may create an atmosphere in which employees understand that their applying for certain positions is fruitless, even nonapplicants can in appropriate circumstances qualify for relief." *Wanger v. G.A. Gray Co.*, 872 F.2d 142, 145 (6th Cir. 1989) (quotation marks omitted); *Day*, 471 F. Supp. 2d at 889. But the plaintiff has produced no evidence that, before the December 2006 licensing requirements became effective, she was ever discouraged from applying. In fact, the plaintiff's declaration states that her first two supervisors told her that she "was being groomed for a Retail Investment Consultant (RIC) position from the time [she] was hired." (Docket No. 28, Ex. 1 at 1.) That is the opposite of discouragement.[5]

The only instance of discouragement contained in the plaintiff's evidence is a statement by supervisor Robert Corsarie, who told the plaintiff that she "would not be advancing within the organization." (*Id.*) But Corsarie became the plaintiff's direct supervisor in May 2007. (Docket No. 25 ¶ 5; *see also* Docket No. 28 at 5 (stating that Corsarie's statement was made "within the last year of [the plaintiff's] tenure with Defendant").) At that time, the plaintiff was unqualified

---

[5] Furthermore, she is time-barred from basing her claim on the defendant's failure to promote her before December 2006, when the new licensing policy became effective. As the Supreme Court has explained, "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" and a party must file a charge within 180 or 300 days of the date of the act. *Morgan*, 536 U.S. at 110. An employer's failure to promote an employee is a discrete act. *Id.* at 114. Thus, the plaintiff's EEOC charge, which was filed in 2008, was not timely as to any promotions that were filled in 2006 or earlier.

for any promotion, because she did not have the requisite licenses.

Indeed, after the new licensing requirements became effective, the plaintiff was unqualified for the job she had, much less for a promotion to RIC. The plaintiff asserts in her declaration that Fifth Third did not apply the licensing policy uniformly, because one RIC, Michael Harris, did not have the proper licenses. (Docket No. 28, Ex. 1 at 1.) But Harris was hired as a RIC in December 2004, before that policy applied. (Docket No. 30, Ex. 2 ¶ 5.) Furthermore, he resigned on October 12, 2007. (*Id.*) According to Mary Beth Frith, the defendant's Assistant Vice President of Employee Relations, the licensing policy applied equally to Harris. (Docket No. 30, Ex. 2 ¶ 5.) The plaintiff's evidence does not contradict this; at most, it shows that the defendant did not terminate or demote Harris before his resignation. But this does not establish that the licensing policy did not apply to him – after all, the plaintiff herself remained employed through October 2007, despite the fact that she was repeatedly unable to pass the Series 66 licensing exam.

In addition, regardless of licensing issues, the plaintiff's deposition testimony establishes that she was otherwise unqualified for the promotion:

> Q: Did you ever see any open RIC positions available?
>
> A: Not after 2006 or so. There were probably some. They wanted someone seasoned and with a book of business, so I was – you know, obviously, that's no – I didn't have a book of business, so I couldn't move into them. . . .
>
> Q: But at the time, they were looking for a seasoned retail investment consultant with a book of business?
>
> A: That's from my understanding.

> Q: And you were neither seasoned nor did you have a book of business?
>
> A: I did not have a book of business.

(Docket No. 23, Ex. 1 at 65-66.)

Finally, the plaintiff has failed to submit evidence that any similarly qualified male co-workers received the promotions that she was allegedly denied. Indeed, she does not specify which particular promotions she was denied. "[I]t is incumbent upon the plaintiff to establish that she and the non-protected person who ultimately was hired for the desired position had similar qualifications." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 242 (6th Cir. 2005). Here, the plaintiff has not even attempted to make this showing.

For all of these reasons, the plaintiff has failed to establish a *prima facie* case that the defendant violated Title VII by failing to promote her.

### B. Gender Discrimination

Nor has the plaintiff established that the defendant otherwise discriminated against her. To make out a *prima facie* claim of discrimination, generally speaking, the plaintiff must show:

> (1) that [she] is a member of a protected class; (2) that [she] suffered an adverse employment action; (3) that [she] was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than [she].

*Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010).

The defendant argues that the plaintiff cannot show an "adverse employment action." It argues that, to show such an action, a plaintiff "'must demonstrate that she experienced a materially adverse change in the terms and conditions of [her] employment.'" (Docket No. 23 at

7 (quoting *Coleman v. ARC Automotive, Inc.*, 255 Fed. Appx. 948, 951 (6th Cir. 2007).) Here, the plaintiff was never demoted or reassigned, and, for the reasons discussed above, the defendant's alleged failure to promote the plaintiff cannot support her claim of discrimination. The only other possible adverse employment action mentioned by the plaintiff is the defendant's decision to pay her less than co-worker George Khoury.[6] (*See* Docket No. 28 at 5-6.)

If a female employee is hired at a lower wage than a similarly situated male co-worker, she has effectively experienced an adverse employment action. *White v. Home Depot U.S.A., Inc.*, No. 05-cv-00683, 2006 U.S. Dist. LEXIS 54076, at *29 (D. Colo. Aug. 3, 2006) ("[T]here does not appear to be a serious dispute that plaintiff . . . alleged he suffered adverse employment actions in terms of his lower starting salary . . . ."); *Peters v. City of Stamford*, No. 3:99-CV-764, 2003 U.S. Dist. LEXIS 4189, at *21-22 (D. Conn. Mar. 17, 2003) (noting that it was uncontested that the plaintiff's "lower starting salary and stipends constitute adverse employment actions"); *Beaubrun v. Thomas Jefferson Univ.*, 578 F. Supp. 2d 777, 782 n.6 (E.D. Pa. 2008) ("A claim of sub-standard wages may qualify as an adverse employment action in some cases . . . ."); *see also Clark v. Lockheed Martin Energy Sys.*, No. 3:06-cv-046, 2007 U.S. Dist. LEXIS 50692, at *36 (E.D. Tenn. July 12, 2007) ("To establish a prima facie case of discrimination in compensation, [the plaintiffs] must demonstrate that the defendants paid them lower wages than they paid

---

[6] The defendant argues that the plaintiff failed to exhaust her administrative remedies regarding any disparate pay claim, because her EEOC charge did not mention it. (Docket No. 23 at 5-6.) The Sixth Circuit has stated, however, that "EEOC complaint[s] should be liberally construed to encompass all claims 'reasonably expected to grow out of the charge of discrimination.'" *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). Regardless, because the plaintiff's claim is untimely and fails on the merits, the court need not address this argument.

employees outside the protected class for equal work."), *aff'd*, 287 Fed. Appx. 502 (6th Cir. 2008); *Drake-Sims v. Burlington Coat Factory Warehouse of Ala., Inc.*, 330 Fed. Appx. 795, 803 (11th Cir. 2009) (stating that, to establish a *prima facie* case of disparate pay, the plaintiff "must show that 'she occupies a position similar to that of a [similarly situated,] higher paid employee who is not a member of her protected class'"). It is undisputed that Khoury, who was hired approximately one month before the plaintiff (Docket No. 25, Ex. 2 at 2), received a salary that was higher than the plaintiff's.

The question, then, is whether the plaintiff has shown that Khoury was similarly situated to her. In the context of a wage-discrimination claim, the Sixth Circuit has explained:

> [T]o be deemed similarly-situated, the individuals with whom [the plaintiff] seeks comparison must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. In other words, the people to whom [the plaintiff] wishes to draw a comparison must be similar to her in all relevant aspects.

*Hughes v. Gen. Motors Corp.*, 212 Fed. Appx. 497, 503 (6th Cir. 2007) (citations and quotation marks omitted).

The plaintiff's only evidence that Khoury was similarly situated is her own vague, conclusory, and self-serving statement that he "performed essentially the same tasks [that she] did." (Docket No. 28, Ex. 1 at 1.) She does not describe those tasks, nor does she explain why she had personal knowledge of all of the tasks that Khoury performed.[7]

---

[7] There is also no evidence that this pay disparity continued until the plaintiff's resignation in 2007.

13

In contrast, the defendant's evidence shows that, in addition to performing the plaintiff's job duties, Khoury "had additional job duties and individual sales goals." (Docket No. 25 ¶ 11; *id.*, Ex. 2 at 1-2 (documents from 2005 outlining Khoury's individual sales goals, including "Gross Dealer Concessions" of $60,000, "Deposits" of $500,000, "Loans" of $50,000, and "Asst Mgmt Dollars" of $500,000).) Because Khoury was subject to defined sales goals, the defendant considered him "more of a 'junior broker,'" and it concluded that he had been placed in the incorrect job code. (Docket No. 25 ¶ 11.) In other words, Khoury and the plaintiff were not "subject to the same standards." *Hughes*, 212 Fed. Appx. at 503.

Because the plaintiff offers nothing to rebut this evidence, a reasonable juror could not conclude that Khoury was a similarly situated employee. Therefore, the plaintiff has not made a *prima facie* case of discrimination. Alternatively, the defendant has given a legitimate, nondiscriminatory reason for the pay disparity, and the plaintiff has not met her burden of showing that this reason was merely pretextual.[8] Accordingly, the plaintiff's evidence does not support a Title VII discrimination claim based on the salary discrepancy.

### C. Hostile Environment and Retaliation

Finally, to the extent that the plaintiff is asserting hostile-environment or retaliation Title VII claims, those, too, fail on the merits.[9]

---

[8] Indeed, it is undisputed that the plaintiff's pay was in the second quartile of the pay range for her job code and was above average compared to all Fifth Third employees with that job code. (Docket No. 25 ¶ 10.) Almost certainly, then, the plaintiff's salary was higher than the salaries of many male sales assistants.

[9] The plaintiff's Complaint asserts such claims (Docket No. 1 ¶¶ 7, 12), but the plaintiff completely ignores them in her brief. Although this suggests that she has abandoned the claims, the court will examine the merits in light of the plaintiff's evidence.

14

Title VII prohibits conduct that is "'sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Cecil v. Louisville Water Co.*, 301 Fed. Appx. 490, 498 (6th Cir. 2008) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). To establish a *prima facie* hostile-environment claim, the plaintiff must show that:

> 1) she is a member of a protected class; 2) she was subjected to unwelcome harassment; 3) the harassment was based upon her protected status; 4) the harassment unreasonably interfered with her work performance by creating a hostile, offensive, or intimidating work environment; and 5) there is a basis for employer liability.

301 Fed. Appx. at 498 (citing *Thornton v. Fed. Express Corp.*, 530 F.3d 451, 455 (6th Cir. 2008)).

In her deposition, the plaintiff mentioned several instances of inappropriate comments made by a single male co-worker. (*See* Docket No. 23 at 13-15.) That co-worker: (1) once stated that a female co-worker was "on [his] ass"; (2) called the same female co-worker a "bitch" or "witch" on six occasions; and (3) sometimes stated, in conversations that the plaintiff overheard, that certain bank tellers were "hot." (*Id.*) While offensive, these comments are not so abusive or extreme that they amount to a change in the terms and conditions of the plaintiff's employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (noting that Title VII is not a "general civility code"). Furthermore, because the plaintiff never notified Fifth Third of this behavior (*see* Docket No. 23 at 18), there is no basis for holding the defendant liable.

Nor has the plaintiff shown that Fifth Third illegally retaliated against her. To establish a *prima facie* retaliation claim, the plaintiff must show that:

> 1) she engaged in activity protected by Title VII; 2) the employer knew of her exercise of protected rights; 3) the employer took a materially adverse action against the plaintiff or subjected her to severe and pervasive retaliatory harassment; and 4) there was a causal connection between the protected activity and the adverse action.

*Cecil*, 301 Fed. Appx. at 501 (citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003)).

The Complaint vaguely alleges that the plaintiff was "scolded" for reporting the disparity in pay between herself and George Khoury. (Docket No. 1 ¶ 12.) But the plaintiff has not produced any evidence in support of this allegation, and her evidence does not otherwise show that the defendant took retaliatory action against her. Furthermore, nothing suggests a causal connection between the defendant's alleged failure to promote the plaintiff in 2007 and the complaint that she filed with human resources in 2004.

Accordingly, the plaintiff cannot maintain either a hostile-environment or a retaliation claim.

## CONCLUSION

For all of the reasons discussed above, the court will grant the defendant's Motion for Summary Judgment. In addition to the fact that the plaintiff's claims are time-barred, her evidence is insufficient to show that the defendant illegally discriminated against her.

An appropriate order will enter.

ALETA A. TRAUGER
United States District Judge